[Civ. No. 3646. Second Appellate District, Division One.—February 24, 1922.]

## LEONARD SAUBLE, Respondent, v. GARY SOUTH COAST AGENCY (a Corporation), Appellant.

[1] SALES—RESCISSION—SURRENDER AND ACCEPTANCE OF THING SOLD. A vendor and vendee may effect a rescission of a written contract of sale by the vendee surrendering up the thing purchased and the vendor accepting the same, and an agreement on the part of the latter to refund the purchase price may then be enforced.

[2] ID.—CONDITIONAL RESCISSION—EFFECT OF RESALE TO THIRD PERSON.—Where a rescission of a contract for the purchase of a motor-truck is made conditional upon the ability of the vendor to make a resale thereof, the truck being surrendered to the vendor, the rescission becomes effective and the vendor bound whenever the latter makes a sale and delivery of the truck to a third person; and even though the vendor makes a conditional sale to said third person, the rescission becomes effective and the vendee under the

rescinded sale is not required to wait to see whether said third person complies with the terms of his contract.

[3] Id.—Rescission of Contract—Authority to Bind Corporation Vendor—Estoppel.—In making the contract for the surrender of the motor-truck, the vendee having dealt with the sales-manager and the secretary-treasurer of the corporation vendor, who had been placed in charge of the business of the latter and with whom the vendee had dealt in making his contract for the purchase of the truck, the vendor is estopped to deny that authority existed in them to bind it.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles S. Crail, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. E. Spencer and C. B. Penn for Appellant.

H. H. Harris and Clyde R. Moody for Respondent.

JAMES, J.—Plaintiff brought this action to recover the sum of $1,200 alleged to be owing to him on a contract. The judgment was in his favor for the amount prayed for and the defendant has appealed.

About the latter part of January, 1920, the plaintiff bargained with the defendant for the purchase of a truck. This truck he desired to operate for the purpose of earning his livelihood. At the time the negotiations with defendant were had plaintiff owned an old truck which he offered to have credited upon account of the purchase of the one defendant was proposing to furnish him. It was finally agreed that the old truck should be received by the defendant at a price of $1,000; that the plaintiff should add thereto the sum of $200 in cash, and that this amount of $1,200 should constitute the first payment on the truck purchased, the full price of which was $3,750. This latter truck was not a new one and was not so understood to be by the plaintiff. The transaction was closed and a written contract signed which contained various terms, including stating the dates upon which installment payments were to be made, the amount due monthly as set forth therein being $212.50. The written contract in one of its terms declared that: "It is agreed that said motor-truck is now in good repair and condition." The agreement contained other terms such as are commonly

used in conditional sales contracts, such as that reserving title in the vendor until the full amount of the purchase price had been paid, and giving vendor the right to retake the property upon the happening of any default in the matter of payment of the installments. After receiving the truck, the plaintiff started to drive with it to a neighboring town. He had not gone far before the motor became disabled and the truck was towed back to defendant's place of business. The truck being again delivered to him, he attempted to operate it at his work, when, as he stated, another "bearing burned out," and it was once more returned to defendant's shops. The burning out of the bearings, according to the plaintiff's testimony, was due to the failure of the mechanics to make necessary oil connections in the motor. After receiving the truck the third time, the plaintiff again went to work with it, whereupon the gears refused to hold and upon being taken, at defendant's direction, to a machine-shop, it was found that some of the parts thereof were so badly worn as to prevent the gears from performing their function. At this point the plaintiff requested the defendant to take back the truck and sell it, which he says it agreed to do. It is a fact that the truck was not again in the hands of plaintiff, but remained wholly under the control of the defendant, except as we will hereinafter state.

Plaintiff alleged in his complaint that defendant agreed to rescind the contract as made, to resell the truck, and return to him $1,200. Defendant in its answer denied that any rescission of the contract had been made, and in connection with that denial alleged that: "Defendant admits that plaintiff delivered said truck to it on or about March 1, 1920, but denies that it was in conformity with the agreement alleged in plaintiff's complaint." In a further and separate defense alleged in the answer defendant stated: "Defendant admits, for the purpose of this defense, that it did promise and agree with plaintiff to endeavor to sell said truck, and that if it did resell the same in a reasonable time it would return or refund to plaintiff all sums which it might find it had received over and above any balance due on said contract, plus all costs and expenses of reselling said truck; that said agreement was made on the express condition that plaintiff would make and pay the installments on his said contract; that defendant did endeavor to resell said truck,

but did not do so until after June 7, 1920." These allegations of the answer show at least a conditional rescission. Early in March the defendant delivered the truck to one Hayden and received· from him $350, issuing a receipt therefor which recited that said sum was received "as a deposit on the purchase of one White truck with the special agreement that if said truck cannot be placed, on steady work within a period of thirty days, then the above amount to be returned to him, less what the truck had earned, less oil, gas, running expenses." The receipt bore date of March 4th. The purchase price was $4,000. Hayden retained the truck and later a more complete contract was entered into for the sale of the vehicle. Hayden, being called as a witness, testified regarding the contract made with the defendant for the purchase of the truck that "the first payment on the truck was to be $1300, if I kept it, and we made an agreement that I was to give them $350 and the balance of it would be taken out of the earnings of the truck until the $1300 was paid; but later on, I think it was in June, they agreed to let me have the truck at $750 the first payment, which I paid them, but I didn't get my contract until some time in July." The same witness testified that "around the 1st of July," as he remembered it, a salesman of the defendant came and asked to be allowed to take the truck, saying that he was going to deliver it to "Mr. Sauble," the plaintiff here, "and in the event that Mr. Sauble wanted to keep it, he wanted to know if it would be agreeable with me, and I told him yes; he said, 'If he don't want it, shall I bring it back to you?' and I said, 'Yes.' " The wife of the plaintiff testified that about the 12th of March she called at the place of business of the defendant and had a conversation with a Mr. Haight (he being the secretary-treasurer of the defendant corporation and the person who executed the contract with the plaintiff on behalf of his company), also with one Garfield, who was sales-manager; that she inquired of them regarding the sale of the truck and wanted to know if the defendant could not advance some money; that Haight referred her to Garfield, saying that the latter was more conversant with the case than he was, whereupon Garfield came in and, upon being acquainted with the purpose of Mrs. Sauble's visit, said: " 'We are doing our best, Mrs. Sauble, to sell that truck, and when we sell it

we are going to give you—Mr. Sauble, his $1200, initial payment and only payment. Twelve hundred dollars was the initial payment of the truck, and we want to pay him his first money then and get our money out of the truck, as soon as we sell it.' I says, 'Well, that doesn't give us our money now.' And he says, 'No, that doesn't. It isn't going to cost Mr. Sauble one cent, not one cent.' Mr. Haight spoke up and said, 'Well, it is out on work now and has been for three or four days.' " A witness for the defendant testified that about the 1st of June, 1920, he took the truck in question to the place of residence of plaintiff, left it across the street, and served upon plaintiff a notice which was signed by defendant corporation, by Haight, secretary. The notice was as follows: ''We hand you herewith statement of your account to June 1, 1920, on account of a used White dump truck purchased from us, and have to advise you that unless payments on your contract are made within three days after the first day of June, we shall immediately declare all your rights to said truck forfeited and the truck will be sold for cost." It will be remembered that a sale agreement had been made in March preceding between the defendant and Hayden, and that Hayden had had possession of the truck continuously under such agreement up to the time that the defendant came and got it for the purpose, as Hayden was informed, of offering it to the plaintiff. The witness who served the last demand upon the plaintiff did not testify that he offered to deliver the truck to the plaintiff, but testified that when he served the demand he did not show the truck to the former.

Plainly enough it appears to us that the evidence as shown in the record was ample to sustain the judgment, and we find no errors of law which furnish any impediment to the making of an order of affirmance. The defendant offered no testimony at all contradicting the statements made by the plaintiff as to the defective condition of the truck, or as to the understanding that was had when the plaintiff last surrendered possession of the truck to it. By its answer it admitted that a conditional rescission was made—that is, that it did receive the truck back with the agreement to resell the same and refund to plaintiff the amount paid, alleging as an added condition, however, that the plaintiff should be required to pay all installments as they became

due under the contract. There was no evidence to support the allegation as to such a condition having been imposed, and in order to give any effect to it at all, we would be required to hold that all of the terms of the original contract remained in force, notwithstanding the surrender to and acceptance by the defendant of the truck, and this only upon the ground that the oral agreement was ineffectual to work a modification of the original contract. [1] A vendor and vendee may effect a rescission of a written contract of sale by the vendee surrendering up the thing purchased and the vendor accepting the same, and an agreement on the part of the latter to refund the purchase price may then be enforced. (Sec. 1691, Civ. Code.) [2] If we concede that the rescission was conditional and that the defendant would have had the right to return the truck to the plaintiff and require him to discharge the obligations of the original contract, nevertheless the defendant would become bound and the rescission effective whenever the latter made sale of the truck to a third person. This the defendant did, by entering into the agreement with Hayden early in March and delivering the truck to the latter, who continued to have its possession and use it up to the time of the trial of the action, except for the temporary interval when the defendant took it at the time a settlement was demanded of the plaintiff in the manner already disclosed. The court was warranted in assuming that this temporary surrender was a mere borrowing done for the purpose of making a perfunctory technical showing of a readiness to deliver the truck to plaintiff. If defendant chose to make a conditional sale to Hayden upon terms of credit of its own choosing, the responsibility for such act was its own, and the plaintiff was not required to wait to see whether the proposed purchaser complied with the terms of his contract. The defendant, in reselling the truck, assumed complete ownership of it and thereby ratified the rescission of plaintiff's contract, if the rescission had not already become effective.

[3] The claim of appellant, that the persons who assumed to act for defendant corporation were without authority to bind the latter, is without merit. The persons with whom plaintiff dealt were those placed in charge of the business of the defendant. They were respectively the salesmanager and the secretary-treasurer of the corporation.

Plaintiff dealt with them in making his contract for the purchase of the truck and he dealt with the same persons in making the contract for the surrender of the vehicle. The corporation, by every indication which the evidence shows, held out the two persons as being clothed with all necessary authority to negotiate sales of its trucks, and it would be estopped thereby from denying that authority existed in them to do any of the acts herein concerned.

The findings of the trial judge were responsive to the issues made by the pleadings and are sufficient to sustain the judgment. We find no errors in the court's rulings as to the admission or rejection of evidence.

The judgment is affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 24, 1922.

All the Justices concurred.

Waste, J., was absent and Richards, J., *pro tem.*, was acting.