[Civ. No. 14029.   First Dist., Div. One.   Sept. 13, 1949.]

JOSEPH E. MARTIN et al., Plaintiffs and Respondents, v. L. R. BUTTER et al., Appellants; BERNICE L. COLLISCHONN, Defendant and Respondent.

J. Elwood Andresen for Appellants.

Raymond J. Ferrario and Robert S. Kernes for Plaintiffs and Respondents.

Breed, Robinson & Stewart for Defendant and Respondent.

PETERS, P. J.—This action involves a dispute over the title to a parcel of real property in Alameda County. Prior to 1926, the property was admittedly owned by Charles F. Lee and his wife. On July 20, 1926, the Lees entered into a written contract to sell the property to L. R. Butter and his wife, the appellants, for a total sum of $5,500 payable at the rate of $50 a month, plus interest. The appellants agreed to pay the taxes and insurance. The contract also provided that if the purchasers defaulted in any of their obligations, and such default continued for 30 days, the Lees should be relieved of all liabilities under the contract, and that all sums paid under the contract should be retained by them as rent. The contract contained the customary "time is of the essence" clause. The appellants took possession of the property upon the execution of the contract and have remained in possession ever since. Mr. Lee died in 1939, and Mrs Lee in 1941.

Their interest in the property became vested in respondent Bernice Lee, now Bernice Collischonn. On October 2, 1946, Bernice sold the property to respondents Joseph and Theresa Martin and delivered the deed to them. In November, 1946, Mr. and Mrs. Butter, upon the request of the Martins, were served with an eviction notice by the O. P. A. informing them that they had to vacate by April, 1947. For a period of five months after receipt of this notice the appellants paid the Martins a monthly rental of $30, but thereafter refused to pay rent, claiming an interest in the property under their 1926 contract. The Martins then brought this action to quiet their title, joining the Butters and Bernice Collischonn. The trial court found that the Butter-Lee agreement was terminated long prior to the sale of the property to the Martins; that after such termination the Butters were merely tenants and had no other interest in the property; and that the Martins were the owners of the property and their title should be quieted. The Butters appeal.

The main contentions of appellants are that their contract was never terminated; that the Lees voluntarily agreed to a reduction in the monthly payments from $50 to $30; that these $30 payments were not rent, but payments on the principal, and interest; that in any event, if there was an abandonment of the 1926 contract, such abandonment was oral and ineffective under the statute of frauds; that neither Mrs. Butter nor Mrs. Lee gave written authority to their respective husbands to modify or terminate the 1926 agreement, and that such written authority was necessary.

None of these contentions is sound. The evidence amply supports the finding that the Butter-Lee contract of 1926 was abandoned by the parties by mutual consent, not later than 1937. The evidence shows that after the 1926 contract was entered into the Butters made their required $50 payments for a little over a year; that they paid the insurance on one occasion and a couple of installments of taxes; that thereafter they failed to pay any taxes or insurance and made a few irregular payments in various small amounts on the principal. Miss Arnest, the bookkeeper and rental agent for the Lees from 1926 down to the death of Mrs. Lee in 1941, testified that Mr. Lee got very disturbed over the appellants' various defaults; that finally in 1936 or 1937 Mr. Lee wrote to appellants and told them that they would have to comply with the terms of the contract or give up the property; that shortly after this letter was written she was present

at a conversation between Mr. Lee and Mr. Butter at which Butter admitted his inability to comply with the terms of the contract; that in that conversation the parties agreed that the contract should be terminated, and, at the request of Butter, it was agreed that appellants could stay on as tenants at $30 per month rental. The acts of the parties thereafter amply corroborate this testimony. Subsequent to 1937, Butter demanded of Mr. Lee, and after his death of Mrs. Lee, that they repair the property. Butter warned the Lees that the Lees owned the property and would be responsible if anyone should be injured thereon. All taxes and insurance were paid by the Lees. Nearly every receipt after 1937 expressly stated that it was a "rent receipt," and in many cases this was written in ink on the receipt. Admittedly, appellants at no time kept a record of the $30 monthly payments showing their application to interest and principal. Miss Lee registered the property with the O. P. A. Rent Division as "rental" property. Although Butter denied receiving a copy of such statement normally sent to a tenant, he admitted receiving some kind of unidentified form which he filled out and returned to the O. P.A. Butter also admitted that he knew that Miss Lee attempted to get O. P. A. approval of a raise in rent, but was unsuccessful. After the Martins bought the property in October, 1946, and after the Butters had been served with the six-month eviction notice, the Butters made no claim to the property but paid the Martins $30 monthly rental for a period of five months. During that period the Martins replaced the sidewalk in front of the house, removed several trees, and performed other work around the premises, all without objection by the Butters. While appellants testified contrary to much of this testimony, this conflict was resolved against them by the trial court and is binding on appeal.

It seems to be the theory of appellants that, under the provisions of section 1698 of the Civil Code and section 1971 of the Code of Civil Procedure, there cannot be an oral abandonment of any interest in real property acquired by an instrument in writing. That is not the law. The true rule, amply supported by many cases, is thus stated in 25 California Jurisprudence, section 206, page 736: ". . . a contract for the purchase and sale of real property is subject to abandonment at any stage of its performance, either by agreement of the parties or by conduct indicating an intent to abandon; and a mutual oral agreement to cancel a contract is

sufficient consideration for its abandonment, if consideration is necessary. *A subsequent contract by which the purchaser becomes the tenant of the vendor operates as a mutual abandonment of the contract of purchase, although the latter instrument is not formally surrendered.* [Italics added.] Any words or acts by one party which indicate that he will not perform the contract, or permit the other party to do so, amounts to an abandonment. Thus a party may abandon a contract by refusing to proceed further with its fulfillment, and his breach of the contract, if material, justifies the other party in treating the contract as abandoned and in abandoning it himself. In such case, abandonment by one party is equivalent to a claim of rescission which may be acquiesced in by the other, thereby effecting a mutual rescission, no formal rescission being necessary after one has acknowledged his inability to perform and has voluntarily abandoned the contract.''

The rule is thus succinctly stated in *Tompkins* v. *Davidow,* 27 Cal.App. 327, 335 [149 P. 788], quoting from the opinion of the trial court: '' 'There can be no question that a contract can be mutually abandoned by the parties at any stage of their performance and each of the parties released from any further obligation on account thereof; that it may be done by parol, and the fact of its having been done established by evidence of the acts and declarations of the parties.' '' (See, also, *Haberman* v. *Sawall,* 72 Cal.App. 576 [237 P. 776]; *San Roque Properties, Inc.* v. *Pierce,* 18 Cal.App.2d 379 [63 P.2d 1198]; *Snodgrass* v. *Parks,* 79 Cal. 55 [21 P. 429]; *McWhinney* v. *Ewers,* 112 Cal.App. 448 [297 P. 42]. For an excellent recent review of the authorities on this precise question see *Grant* v. *Aerodraulics Co.,* 91 Cal.App.2d 68, 75 [204 P.2d 683].) This is also the law in other states. (See quotation and many cases collected in 66 C. J. § 292, p. 730.)

Appellants also object to the finding that the contract was terminated ''on or about February, 1937,'' and long prior to October 2, 1946, contending that there is no evidence that the contract was terminated in *February,* 1937. While that month appears to be the first in which a $30 ''rental receipt'' was issued, and thus the precise finding is supported, even if this were not true, the precise month of the abandonment is immaterial. The finding that the abandonment occurred in 1937 is amply supported, and that is all that is important.

■ The last contention of appellants is that there is no evidence that either Mrs. Butter or Mrs. Lee gave their husbands written authority to modify or cancel the 1926 agreement, and, it is contended, such written authority was required under the terms of section 2309 of the Civil Code. That section provides that: "[1] An oral authorization is sufficient for any purpose, [2] except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing." The second clause of the section requiring the authority to be in writing only applies where the contract to be authorized is required to be in writing. The cases heretofore cited demonstrate that the agreement to abandon is not required to be in writing, but may be oral. Therefore, the first clause of the section, not the second, is applicable. There is no doubt that the evidence demonstrates that the husbands had at least implied authority to represent their wives in making the abandonment agreement. That is all that is required.

The judgment appealed from is affirmed.

Ward, J., and Bray, J., concurred.

A petition for a rehearing was denied October 13, 1949, and appellants' petition for a hearing by the Supreme Court was denied November 10, 1949.